IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| YVONNE LAFORETT GONZALES,<br><br>    Plaintiff,<br><br><br>  v.<br><br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security Administration,<br><br>    Defendant. | Case No. 2:09-cv-573-CW<br><br><br><br>**REPORT AND RECOMMENDATION** |

Before the Court is an action filed by Plaintiff, Yvonne
Laforett Gonzales, asking the Court to reverse the final agency
decision denying her applications for Disability Insurance
Benefits (hereafter "DIB") and Supplemental Security Income
(hereafter "SSI") under Titles II and XVI of the Social Security
Act. *See* 42 U.S.C. §§ 401-433, 1381-1383f. The Administrative
Law Judge (hereafter "ALJ") found that Ms. Gonzales was not
disabled because she was capable of making a successful
adjustment to work that exists in significant numbers in the
national economy. Ms. Gonzales now challenges the ALJ's decision
by arguing that it is legally erroneous and not supported by
substantial evidence.

Pursuant to Civil Rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, because the Court concludes that oral arguments are not necessary in this case, the Court denies Ms. Gonzales's request for oral argument (Doc. 12, at 2) and has determined this case on the basis of the briefing alone. *See* DUCivR 7-1(f).

Having carefully considered the parties' memoranda and the complete record in this matter, the Court recommends that the case be affirmed.

## FACTUAL BACKGROUND

Ms. Gonzales was born on October 20, 1960, was 44 years old on her alleged onset date of May 25, 2005, and was 48 on the date of the ALJ's decision. (Doc. 10, the certified copy of the transcript of the entire record of the administrative proceedings relating to Yvonne Laforett Gonzales (hereafter "Tr. __") 21, 220.) She attended high school and almost completed the 10th grade. (Tr. 42-43.) In her past relevant work, Ms. Gonzales worked as a cashier, a "light" job. (Tr. 64.)

Ms. Gonzales was involved in a car accident on May 25, 2005, her alleged onset date. (Tr. 31, 211.) The medical evidence reveals that she saw Dr. Stephen Wood both before and after the car accident. (Tr. 211-212.) At Dr. Wood's direction, Ms. Gonzales underwent an MRI examination of her back in September

2

2005. (Tr. 207, 218-21.) The MRI showed "mild hypertrophic facet joint changes" in parts of her lumbar spine at L4-5, which caused "mild central stenosis" at L3-4 and L4-5. (Tr. 219.) In all other respects, the MRI of her lumbar spine was normal. (Tr. 219.) In addition, an MRI of her cervical spine was completely normal, revealing no problems. (Tr. 220-21.)

In May through September 2006, Dr. Wood examined Ms. Gonzales occasionally, but his examination notes are handwritten, sparse, and difficult to read. It appears that Dr. Wood found that Ms. Gonzales had reduced range of motion in her neck, back and right shoulder. (Tr. 205, 207, 211.) Dr. Wood did not indicate how much Ms. Gonzales's range of motion was reduced. Dr. Wood also noted that Ms. Gonzales had occasional pain in her lower back and, perhaps, in other areas (his notes do not specify which areas). (Tr. 205, 207.) In September 2006, Dr. Wood found that Ms. Gonzales had a positive straight leg raising test at 45 degrees as to her left leg. (Tr. 197.)

In March 2007, Richard Ingebretsen, M.D., Ph.D., examined Ms. Gonzales to determine her level of functioning. (Tr. 222-24.) Dr. Ingebretsen noted that Ms. Gonzales walked into the examination room without the use of a cane and she carried a purse. (Tr. 222.) In reporting Ms. Gonzales's functional

3

status, Dr. Ingebretsen wrote that she was "generally independent in all activities of daily living and self care." (Tr. 222.) He reported that Ms. Gonzales could, *inter alia*, cook, do laundry (using her left hand), and drive an automatic transmission car. (Tr. 222.) According to Dr. Ingebretsen, Ms. Gonzales could sit for one hour at a time and walk or stand for 15 minutes at a time. (Tr. 222.)

Regarding the results of testing, Dr. Ingebretsen found that Ms. Gonzales could "squat to about 30% of normal" and had normal muscle strength in her extremities. (Tr. 223.) As to the neurological examination, Dr. Ingebretsen reported that Ms. Gonzales had a normal gait and she could tandem walk. (Tr. 224.) The doctor noted that Ms. Gonzales refused to attempt to heel walk or toe walk. (Tr. 224.) Dr. Ingebretsen found that Ms. Gonzales had pain in her right shoulder but no pain in her hand joints or knees. (Tr. 224.) He also found that she had no tenderness in any part of her spine. (Tr. 224.) Dr. Ingebretsen reported that Ms. Gonzales had normal range of motion in her left arm and both knees, but limited range of motion in her right arm and spine (approximately 75 percent of normal). (Tr. 224.) Dr. Ingebretsen found that Ms. Gonzales's straight leg raising test was negative, or normal, in both legs. (Tr. 224.) Dr.

Ingebretsen did not indicate that Ms. Gonzales had any sensory or reflex loss. (Tr. 222-24.)

Dr. Ingebretsen concluded that Ms. Gonzales's chief medical problem was her sore right shoulder, which showed a marked decrease in range of motion and meant that "[s]he would have a hard time using her right arm for work." (Tr. 224.) The doctor observed that she "walked normally without the use of a cane." (Tr. 224.) He also found that Ms. Gonzales could concentrate, "but pain might limit the time," she could reason and communicate well, and she was able to follow commands. (Tr. 224.)

In July 2007, Dr. Wood cleared Ms. Gonzales "to start interviewing to return to work." (Tr. 198.)

In October 2007, Dr. Wood completed several questionnaires to support Ms. Gonzales's request for disability benefits. (Tr. 247-48, 249-54, 255-58.) On one of the questionnaires, Dr. Wood indicated that Ms. Gonzales met many of the criteria for Listing 1.04A (Tr. 247-48), but - according to Dr. Wood - Ms. Gonzales did not meet all of the required criteria because she did not have sensory or reflex loss. (Tr. 248.) Dr. Wood did check a box indicating that Ms. Gonzales's impairments equaled a listing; however, when prompted to "explain in detail" that determination, Dr. Wood offered no explanation. (Tr. 248.)

One of the questionnaires Dr. Wood completed focused on Ms.
Gonzales's headaches. (Tr. 249-54.) He checked boxes indicating
that her headaches resulted from anxiety/tension and cervical
disc disease. (Tr. 251.) Dr. Wood also checked a box stating
that Ms. Gonzales could not tolerate low stress jobs, but -
although prompted - he did not indicate that she would need to
take unscheduled breaks during a work day. (Tr. 252-53.) In
response to the inquiry asking whether Ms. Gonzales would have
limitations in the ability to sit, stand, walk, lift, bend,
stoop, or use her extremities, Dr. Wood identified no such
limitations. (Tr. 253-54.)

In a third questionnaire, Dr. Wood checked boxes indicating
that Ms. Gonzales had a number of extreme limitations that
precluded her ability to work. (Tr. 255-58.) Among other
things, he indicated that Ms. Gonzales: (1) could lift only less
than ten pounds, and only occasionally; (2) could sit, stand, and
walk for less than two hours; (3) would need to lie down at
unpredictable intervals; (4) could never engage in any postural
activities (e.g. climb stairs); (5) could not ambulate
effectively; and (6) would miss work more than three times a
month. (Tr. 255-58.)

In July 2008, Dr. Wood wrote two almost identical letters to

"whom it may concern." (Tr. 261-62.) In these short, one-paragraph letters, he wrote that Ms. Gonzales was unable to work indefinitely. (Tr. 262.)

. At the hearing before the ALJ, Ms. Gonzales, who was represented by counsel, testified that after her accident in May 2005, she did not have any pain and the MRI examinations "came back negative on everything" (Tr. 31); however, Ms. Gonzales said she later experienced such extreme pain that she could no longer work (Tr. 31-32). She testified that she could not lift even a gallon of milk (Tr. 33) and that she could cook simple things, do laundry, and drive (Tr. 40-41). Ms. Gonzales also said she could climb stairs using the handrails (Tr. 44), sit through a television show lasting one-half hour, and sit at a movie theater watching a movie for 20 minutes (Tr. 47-48, 51).

Ken Lister, a vocational expert (hereafter "VE"), who testified without objection, identified Ms. Gonzales's past relevant work as cashier 2 (light work with a Specific Vocational Preparation (hereafter "SVP") level of 2, unskilled work) based on Ms. Gonzales's description of her past jobs. (Tr. 64.) The ALJ asked the VE to consider a person who could do sedentary, unskilled work with several additional limitations: lift no more than five pounds, and the lifting would be primarily with the

7

left upper extremity; occasionally lift and carry articles from three to five pounds; sit for six hours in a workday; stand/walk for two hours, with a "liberal ten to 15 minute sit/stand option"; make brief postural changes every ten to fifteen minutes; not do overhead lifting or reaching of any significance with the right upper extremity; occasionally handle, reach and finger with the right upper extremity - in particular, could use the right shoulder only occasionally; and not do repetitive activities with either upper extremity. (Tr. 64-65.) The VE testified that such a person could not do Ms. Gonzales's past work because that job required a light exertional level (Tr. 65); however, the VE also testified that such a person could do the sedentary, unskilled jobs of surveillance system monitor, call out operator, and food and beverage order clerk (Tr. 65-67).

In a second hypothetical question, the ALJ added the following limitations: work at a (1) low stress level, (2) lower production level, (3) lower concentration level, and (4) lower memory level. The VE testified that such a person could still perform the aforementioned jobs, but the number of jobs would be reduced. (Tr. 64-68.)

In his decision, the ALJ found that Ms. Gonzales had not engaged in substantial gainful activity since May 25, 2005 (Tr.

14); that Ms. Gonzales had the following severe impairments:
right shoulder disorder, disorders of the back (discogenic and
degenerative), and depression (Tr. 14); and that Ms. Gonzales's
impairments did not satisfy a listed impairment, specifically
Listings 1.04 (disorders of the spine) and 12.04 (affective
disorders) (Tr. 15-16). The ALJ then found that Ms. Gonzales's
impairments resulted in the residual functional capacity
(hereafter "RFC") described in the second hypothetical question
(set forth in the above paragraph) given to the VE during the ALJ
hearing. (Tr. 16.) Considering this RFC, the ALJ determined
that Ms. Gonzales could not perform her past work, but she could
perform other substantial, gainful work in the national economy.
(Tr. 21-23.) As a result, the ALJ determined that Ms. Gonzales
was not disabled. (Tr. 23, 24.)

PROCEDURAL BACKGROUND

Ms. Gonzales filed for DIB and SSI on November 9, 2006,
alleging she had been disabled since May 25, 2005. (Tr. 12.)
After her application was denied initially, Ms. Gonzales
requested a hearing before an ALJ. (Tr. 12, 25-78.) After the
August 4, 2008 hearing before the ALJ, the ALJ issued a decision
finding Ms. Gonzales was not disabled from May 25, 2005, through
December 1, 2008, the date of the decision. (Tr. 12-24.) After

the Appeals Council denied Ms. Gonzales's request for review (Tr. 1-6), the ALJ's decision became the Commissioner's final decision. *See* 20 C.F.R. § 404.981. As such, Ms. Gonzales had exhausted her administrative remedies and the case was ripe for judicial review. *See* 42 U.S.C. § 405(g).

On June 29, 2009, after receiving the Appeals Council's denial of her request for review, Ms. Gonzales filed her Complaint and the case was assigned to United States District Judge Clark Waddoups. (Doc. 3.) Ms. Gonzales filed her memorandum requesting that the Commissioner's decision be reversed or remanded on March 12, 2010. (Doc. 12.) On April 12, 2010, the Commissioner filed his response memorandum. (Doc. 13.) Ms. Gonzales filed her reply memorandum on June 10, 2010. (Doc. 15.)

On April 16, 2010, Judge Waddoups referred the case to United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. 14.)

### STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). "Substantial

evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (citation omitted), and "requires more than a scintilla but less than a preponderance," *Lax*, 489 F.3d at 1084. The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

The Court will not reweigh the record evidence or substitute its judgement for that of the agency in determining the validity of Ms. Gonzales's arguments. *See Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("To the extent that [plaintiff] is asking this court to reweigh the evidence, we cannot do so."); *Lax*, 489 F.3d at 1084. The Court may only review the ALJ's decision for legal error and may review the evidence to evaluate its sufficiency, not its weight. *See id.; see also Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("Our limited scope of review precludes this court from reweighing the evidence or substituting our judgment for that of the [Commissioner]." (quoting *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1500 (10th Cir. 1992))).

## ANALYSIS

Ms. Gonzales challenges the ALJ's decision by arguing it is

not supported by substantial evidence and it is legally
erroneous.  Specifically, Ms. Gonzales argues:  (1) the ALJ
improperly evaluated the medical evidence and the opinion of Dr.
Wood, Ms. Gonzales's treating physician; (2) the ALJ failed to
properly take into consideration all of Ms. Gonzales's severe
impairments and failed to properly determine her RFC; and (3) the
ALJ's finding that Ms. Gonzales did not meet Listing 1.04 is not
supported by substantial evidence.

## I.  Dr. Wood's Opinion

The Court first examines Ms. Gonzales's argument that the
ALJ did not give proper weight to the opinions of Dr. Wood, Ms.
Gonzales's treating physician.

An ALJ is required to give controlling weight to the
well-supported opinion of a treating physician, so long as it is
not inconsistent with other substantial evidence in the record.
*See* 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); *see also Watkins
v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); *Bean v. Chater*,
77 F.3d 1210, 1214 (10th Cir. 1995).  The ALJ must first consider
whether the medical opinion is well-supported by medically
acceptable clinical and laboratory diagnostic techniques.  If it
is not, then the opinion is not given controlling weight.  If it
is so supported, then the ALJ must determine whether the opinion

12

is consistent with other substantial evidence in the record. If
the opinion is consistent with such record evidence, then the
opinion is given controlling weight. *See Hamlin v. Barnhart*, 365
F.3d 1208, 1215 (10th Cir. 2004); *Watkins*, 350 F.3d at 1300. If
it is inconsistent, then the opinion is not given controlling
weight. Moreover, a treating physician's opinion may be rejected
if the opinion is not supported by specific findings or if the
opinion is brief or conclusory. *See id.; Frey v. Bowen*, 816 F.2d
508, 513 (10th Cir. 1987). When an ALJ decides to disregard a
medical report by a claimant's physician, he must set forth
"specific, legitimate reasons" for his decision. *Miller v.
Chater*, 99 F.3d 972, 976 (10th Cir. 1996) (*quoting Frey*, 816 F.2d
at 513.

In examining medical opinions from all acceptable medical
sources (treating, examining, and nonexamining physicians), the
ALJ will consider, in addition to those considerations discussed
above: (1) the relationship between the source and the claimant,
including its length, nature, and frequency; (2) the degree to
which the source presents an explanation and relevant evidence to
support the opinion, particularly medical signs and laboratory
findings; (3) how consistent the medical opinion is with the
record as a whole; (4) whether the source is a specialist and

offers an opinion related to the area of specialty, and (5) any
other factors that tend to support or contradict the opinion.
*See* 20 C.F.R. § 404.1527(d); Social Security Ruling (hereafter
"SSR") 06-03p, 2006 WL 2329939, at *3; *Goatcher v. United States
Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.
1995). Not every factor applies in every case, and the ALJ need
not formally and expressly recite and apply all of these factors
in deciding what weight to give a medical opinion. *See Oldham v.
Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Turning to the instant case, the ALJ decided not to "accept"
the opinions expressed in the disability questionnaire forms
(hereafter "disability questionnaires") completed by Dr. Wood.
(Tr. 21.) The ALJ explained that he was not

> accepting [Dr. Wood's opinions in the
> disability questionnaires] as they are not
> well supported by medically acceptable
> clinical and diagnostic techniques, nor are
> they consistent with the doctor's own
> clinical findings, i.e., normal reflexes,
> sensation, strength, etc. (see, Exs. 1F; 7F).
> In fact, in the midst of Dr. Wood's opinions,
> in July 2007, he candidly opined claimant was
> capable of "interviewing to return to work."
> (Exhibit(s) 1F, pg. 5). Treatment notes and
> other examinations show a degree of
> limitation but not to the point suggested by
> Dr. Wood. In addition, Dr. Wood is not a
> mental health expert, but that of a family
> practitioner, and, therefore, is not
> qualified to make opinions regarding

14

> claimant's mental health issues. For these
> reasons, Dr. Wood's opinions are afforded
> little weight in the findings made by the
> undersigned in regards to the claimant's
> ability, or lack thereof, to perform work-
> related activities.

(Tr. 21.) Thus, the ALJ set forth the specific, legitimate

reasons he was not accepting the opinions expressed by Dr. Wood

in the disability questionnaires (hereafter "Dr. Wood's

questionnaire opinions").

First, the ALJ found that Dr. Wood's questionnaire opinions

were not well-supported by medically acceptable clinical and

laboratory diagnostic techniques. They were not explained by any

specific objective medical evidence,[1] and they were at odds with

other evidence in the record (as discussed below). Consequently,

the ALJ did not give Dr. Wood's questionnaire opinions

controlling weight. *See Hamlin*, 365 F.3d at 1215; *Watkins*, 350

F.3d at 1300.

Second, the ALJ determined that Dr. Wood's questionnaire

opinions were not consistent with Dr. Wood's own clinical

findings - findings he made while he was treating Ms. Gonzales -

---

[1]In addition, the Court notes that Dr. Wood provided very little
analysis or explanation for his conclusory questionnaire
opinions. *See Frey*, 816 F.2d at 513 (stating that a treating
physician's opinion may be rejected if it is "brief, conclusory,
and unsupported by medical evidence").

which included (a) findings of normal reflexes, sensation, strength, etc., and (b) an opinion in July 2007 that Ms. Gonzales was capable of interviewing to return to work (indicating Ms. Gonzales was capable of returning to work). The ALJ explained that Dr. Wood's notes of Ms. Gonzales's treatment did not mention the extreme functional limitations Dr. Wood later identified on the disability questionnaires. These inconsistencies further supported the ALJ's decision not to give Dr. Wood's questionnaire opinions controlling weight. *See Hamlin*, 365 F.3d at 1215; *Watkins*, 350 F.3d at 1300.

Third, the ALJ determined that the objective medical evidence in the record did not support the degree of limitation suggested by Dr. Wood's questionnaire opinions.[2] *See* 20 C.F.R. § 404.1527(d)(3); SSR 06-03p, 2006 WL 2329939, at *3; *Goatcher*, 52 F.3d at 290.

---

[2]The Court notes that MRI examinations showed only mild changes to Ms. Gonzales's lumbar spine and no problems at all with her cervical spine. (Tr. 219-21.) In addition, Dr. Ingebretsen reported that Ms. Gonzales: had normal muscle strength; walked with a normal gait; could tandem walk; had no pain in her hand joints or knees; no tenderness in her spine; had a negative straight leg raising test; could concentrate; could reason and communicate well; could follow commands; and was generally independent in all activities of daily living and self care. (Tr. 222-24.) In fact, Dr. Ingebretsen found that Ms. Gonzales's chief medical problem was Ms. Gonzales's sore right shoulder, not the disabling back problems that Dr. Wood referenced. (Tr. 224.)

Fourth, the ALJ explained that Dr. Wood is not a mental health expert and is not qualified to make opinions regarding Ms. Gonzales's mental health issues. *See* SSR 06-03p, 2006 WL 2329939, at *3.

Thus, the ALJ applied the proper analysis in determining what weight to give Dr. Wood's questionnaire opinions and he gave specific, legitimate reasons for his decision.[3] As a result, the Court rejects Ms. Gonzales's challenge to the weight the ALJ gave to Dr. Wood's questionnaire opinions.

---

[3] The Court also notes that Dr. Wood's questionnaire opinions were not consistent with one another. For example, on one form, Dr. Wood was prompted to indicate whether Ms. Gonzales would need to take unscheduled breaks during the work day, but he did not so indicate (Tr. 252-53); however, on a different form (completed the same day), Dr. Wood noted that Ms. Gonzales would need to lie down at unpredictable intervals (Tr. 256). Further, on one disability questionnaire, in response to the question whether Ms. Gonzales would have limitations in the ability to sit, stand, walk, lift, bend, stoop, or use her extremities, Dr. Wood identified no such limitations (Tr. 253-54), but on a different form, he asserted that Ms. Gonzales had extreme limitations in her ability to sit, stand, stoop, bend, and climb stairs (Tr. 255-56). *See White v. Barnhart*, 287 F.3d 903, 907-08 (10th Cir. 2002) (treating physician's opinion may be rejected where the physician did not explain the reasons for new limitations mentioned in a later assessment).

The Court further notes that Dr. Wood's opinion that Ms. Gonzales could "never" climb stairs was inconsistent with Ms. Gonzales's own testimony that she could climb stairs. (Tr. 44, 256.)

Next, Ms. Gonzales challenges the ALJ's RFC assessment by contending the ALJ committed reversible error by not properly assessing Ms. Gonzales's RFC.

In determining Ms. Gonzales's RFC, the ALJ expressly considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p."[4]  (Tr. 17.) The ALJ also "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  (Tr. 17.)  After considering the entire record, the ALJ found that Ms. Gonzales had the RFC to perform a reduced range of sedentary work, with several additional limitations.  (Tr. 16.)  For example, the ALJ found Ms. Gonzales could stand or walk only two hours per day, so long as she could alternate between sitting and standing every 10-15 minutes.  (Tr. 16.)

---

[4]One of Ms. Gonzales's arguments is that the ALJ failed to consider Ms. Gonzales's headaches when assessing her RFC.  The Court concludes that this argument is not supported by the record.  In his decision, the ALJ refers at least twice - once in discussing Ms. Gonzales's testimony and once in discussing the documentary evidence - to Ms. Gonzales's "head pain."  (Tr. 17.)

Ms. Gonzales's challenge to the ALJ's RFC assessment is based on Dr. Wood's questionnaire opinions. Specifically, Ms. Gonzales argues that the ALJ's RFC assessment contradicts Dr. Wood's questionnaire opinions. Because the ALJ chose to not accept Dr. Wood's questionnaire opinions - which decision the Court has just addressed - Ms. Gonzales's RFC argument lacks support. Therefore, the Court finds that Ms. Gonzales's challenge to the ALJ's RFC assessment lacks merit.[5]

### III. Listing 1.04

Finally, the Court examines Ms. Gonzales's argument that at step three of the ALJ's analysis, the ALJ failed to properly take into consideration all of Ms. Gonzales's severe impairments and the combined effect of those impairments as required by 20 C.F.R. §§ 404.1521 and 404.1523, and by SSR 96-8p. Specifically, Ms. Gonzales argues that her impairments either met or equaled the

---

[5]The Court notes that it is the Commissioner's responsibility to assess a claimant's RFC; in other words, it is a question reserved by law to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(2). Similarly, the ultimate issue of whether a claimant is disabled is also reserved to the Commissioner; a physician's opinion on that issue is not controlling. *See* 20 C.F.R. § 404.1527(e)(1). As a result, the Commissioner does not give any special significance to a physician's opinion on either of those issues. In fact, such an opinion does not qualify as a "medical opinion" under the regulations. *See id.*

At step three of the disability analysis, the ALJ determines whether any medically severe impairment, alone or in combination with other impairments, meets or is equivalent to a listed impairment. *See* 20 C.F.R. §§ 404.1525-404.1526 & pt. 404, subpt. P, app. 1; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). The claimant has the burden to present evidence establishing that her impairments meet or equal a listed impairment. Specifically, "[t]o show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support *each of the various requisite criteria for the impairment*." *Lax*, 489 F.3d at 1085 (emphasis added).

To satisfy a listing, a diagnosis of a musculoskeletal disorder (such as a spinal disorder) must be supported by appropriate objective evidence, including detailed descriptions of the joints and laboratory findings (findings by x-ray or other

---

[6]The Court confines its analysis of Ms. Gonzales's argument to Listing 1.04A because her record citations and specific argument relate only to Listing 1.04A (Doc. 12, at 4-6). *See Wall v. Astrue*, 561 F.3d 1048, 1065 (10th Cir. 2009) ("Where an appellant lists an issue, but does not support the issue with argument, the issue is waived on appeal." (Citation omitted.)). Ms. Gonzales has not provided argument in support of the notion that she met the requirements of Listings 1.04B or 1.04C.

20

appropriate medically acceptable imaging such as MRI or CAT scan). *See* 20 C.F.R. Pt. 404, subpt. P, app. 1, 1.00C.1 (diagnosis and evaluation). To meet Listing 1.04A, there must be a disorder of the spine resulting in compromise of the nerve root or the spinal cord, with

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscles weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Here, the ALJ specifically considered whether Ms. Gonzales's impairments satisfied Listing 1.04A and concluded that they did not "as borne out in the description of medical evidence below in Finding 5 [regarding her RFC], the claimant has not exhibited the signs or findings to meet or equal the requirements of any part of [Listing 1.04]."[7] (Tr. 15.) In his description of the medical evidence at Finding 5, the ALJ stated, in part:

---

[7]The Court notes that the Tenth Circuit has held that "an ALJ's findings at other steps of the sequential process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Fischer-Ross*, 431 F.3d at 733 (clarifying the holding of *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996).

21

[S]ince August 1, 2005, the claimant's alleged onset date, there is very little objective basis to support claimant's alleged chronic functional limitations due to her physical and mental impairments. For example, records from Dr. Stephen Wood at the South Foothill and Dr. Richard Ingebretsen dated May 2005 through April 2007 document conservative treatment for low back, neck and head pain, secondary to a motor vehicle accident, as well as depression. [Record citations.] However, diagnostic testing of the low back and cervical spine four months subsequent to her motor vehicle accident revealed "normal" findings or only "mild" findings. [Record citations.] Also, although the above-noted records reflected some limited range of motion with pain during the period May 2005 through April 2007, all other findings were consistently within *normal or, at most, mild limits*, including those found during neurological, motor, deep tendon, coordination, sensory and gait and station testing.

. . . .

In this case, the claimant's complaints far exceed any acceptable, objective medical evidence of a physical source for the degree of impairments alleged. The undersigned is aware claimant has a history of ongoing pain issues related to her shoulder and back impairments; however, as discussed above in the description of medical evidence, evaluations have consistently been within normal limits, she has had no persistent neural deficits, diagnostic findings have been, for the most part, within normal limits and, on numerous occasions, it has been noted that her pain is controlled with medication.

(Tr. 17-18, 19) (emphasis in original).

Thus, contrary to Ms. Gonzales's argument, the ALJ discussed objective medical evidence that contradicted Ms. Gonzales's assertion that her impairments satisfied Listing 1.04A's requirements - especially its requirement of significant neural deficits.

Ms. Gonzales relies on Dr. Wood's questionnaire opinions to support her assertion that her impairments met the requirements of Listing 1.04A[8]; however, the ALJ chose to not accept Dr. Wood's questionnaire opinions - which decision the Court addressed in Section I above. Because Ms. Gonzales has supported much of her listing argument with Dr. Wood's questionnaire opinions, without those opinions, critical elements of Ms. Gonzales's argument lack support in the record (e.g., Doc. 15, 12-13).[9] As a result, Ms.

---

[8]Dr. Wood indicated in his questionnaire opinions that even though Ms. Gonzales did not meet all the criteria of Listing 1.04A because she did not have sensory or reflex loss, Ms. Gonzales's combined impairments are medically equivalent to the severity of conditions in Listing 1.04A (Tr. 248); however, where he checked the box indicating a medical equivalence, Dr. Wood was instructed to explain in detail how Ms. Gonzales's impairments are equivalent to the Listing's requirements with reference to specific supporting clinical findings (Tr. 248). Dr. Wood offered no explanation for his answer, leaving the ALJ, and now the Court, with no objective medical basis beyond Dr. Wood's unsupported checked box upon which to make such a finding. (Tr. 248.)

[9]Moreover, as mentioned in the previous note, Dr. Wood indicated in his questionnaire opinions that Ms. Gonzales did not have

Gonzales has not shown that the ALJ's finding that her

impairments did not meet or equal the requirements of Listing

1.04A is not supported by substantial evidence, and the Court

rejects it.[10]

---

sensory or reflex loss (Tr. 248), an essential element of Listing
1.04A.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04A.
Further, Ms. Gonzales has not alleged that she had such sensory
or reflex loss, and she fails to cite any medical evidence of
such loss.  The failure to meet even one criterion means that the
listing is not satisfied:  "For a claimant to show that [her]
impairment matches a listing, it must meet all the specified
medical criteria.  An impairment that manifests only some of
those criteria, no matter how severely, does not qualify."
*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in
original); *see also* SSR 83-19, at 91.  Ms. Gonzales has not
sufficiently shown that her impairments met or equaled the
requirements of Listing 1.04A.  Aside from her general assertions
and arguments and her citation to Dr. Wood's questionnaire
opinions, Ms. Gonzales has not provided the Court with any
specific argument or record citation to properly support her
contention that her impairments were sufficiently severe to
collectively equal Listing 1.04A's requirements, despite her lack
of sensory or reflex loss.

[10]The Court notes that its review of the record reveals further
support for the ALJ's finding that Ms. Gonzales's impairments did
not meet the Listing 1.04A's requirements:  it appears that Ms.
Gonzales failed to provide evidence establishing that she had a
positive straight leg raising test for the required duration.  To
establish disability, Ms. Gonzales had to prove that her
impairments met the requirements of Listing 1.04A for a
continuous period of at least 12 months.  *See* 20 C.F.R. §
404.1525(c)(4); *Lax*, 489 F.3d at 1084.  While Ms. Gonzales relies
on a positive straight leg raising test she had when Dr. Wood
examined her in September 2006 (Tr. 197), only six months later,
when Dr. Ingebretsen examined Ms. Gonzales, Ms. Gonzales's
straight leg raising test was negative (Tr. 224).  Thus, it
appears the record does not demonstrate that Ms. Gonzales met the

In addition, without deciding the issue, the Court

acknowledges that there is some evidence that Ms. Gonzales's

impairments met at least one of the requirements of Listing

1.04A, thereby perhaps contradicting the ALJ's statement that Ms.

Gonzales "has not exhibited the signs or findings to meet or

equal the requirements of any part of [Listing 1.04]"; however,

having carefully examined the record, the Court concludes that

any deficiency in the ALJ's articulation of his reasoning to

support his step three and/or step four determinations is

harmless error. *See Fischer-Ross*, 431 F.3d at 735 (stating, in

addressing, *inter alia*, Listing 1.04A, "the ALJ's confirmed

findings at steps four and five of his analysis, coupled with

indisputable aspects of the medical record, conclusively preclude

Claimant's qualification under the listings at step three. . . .

Thus, any deficiency in the ALJ's articulation of his reasoning

to support his step three determination is harmless"). The Court

concludes that the ALJ's discussion at steps 4 and 5 of the

disability analysis and the medical evidence of record provide

---

straight leg raising test for at least 12 consecutive months.
*See* 20 C.F.R. pt. 404, subpt. P, app. 1, 1.00(D) ("Because
abnormal physical findings may be intermittent, their presence
over a period of time must be established by a record of ongoing
management and evaluation.").

substantial evidence to support the ALJ's determination that Ms. Gonzales's impairments do not meet or equal Listing 1.04A's requirements. As a result, the Court concludes that the ALJ did not commit reversible error in finding that Ms. Gonzales did not meet or equal Listing 1.04A.

## RECOMMENDATION

Based on the above analysis, **IT IS RECOMMENDED** that the ALJ's decision be **AFFIRMED**.

Copies of the foregoing report and recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the report and recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within fourteen (14) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this 26th day of October, 2010.

BY THE COURT:

Samuel Alba
United States Magistrate Judge